UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**THEA GRAM COUNSELL,**

       **Plaintiff,**

v.                                                                     Case No. 08-14236
                                                                     HONORABLE DENISE PAGE HOOD


**LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON and LIBERTY MUTUAL
GROUP, INC.**

       **Defendants.**
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on cross-motions for entry of judgment based on the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff Thea Gram Counsell ("Counsell") filed a Motion for Judgement to Reinstate Long-Term Disability Benefits [Docket No. 15, filed on June 2, 2009]. Defendants Liberty Life Assurance Company of Boston and Liberty Mutual Group, Inc. filed a response on June 24, 2009 [Docket No. 20], to which Plaintiff filed a reply [Docket No. 23, filed on July 27, 2009]. Defendants filed a Motion for Entry of Judgment [Docket No. 14, filed on June 2, 2009]. Plaintiff filed a response on June 24, 2009 [Docket No. 21], to which Defendants filed a reply [Docket No. 24, filed on July 27, 2009].

**II.    STATEMENT OF FACTS**

Plaintiff was employed as a Resident Sales Representative with Defendant Liberty

Mutual.[1] As an employee, she was insured under the Liberty Mutual Long Term Disability Policy ("the Policy"). Under the Policy, "disability" or "disabled" means:

> i. If the Covered person is eligible for the 18 Month Own Occupation, Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 18 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and
>
> ii. After 18 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

(AR 6).

Plaintiff currently suffers from paraesophogeal hernia, suspected Marfan's syndrome, and major depression. As a result, she has undergone several operations and requires heavy medication. In August of 2003, after undergoing one of several surgeries, Plaintiff was deemed eligible to receive short-term disability benefits. On October 8, 2004, Plaintiff was approved for long-term disability benefits under the Policy. Within a few weeks of having been approved for benefits, Plaintiff states that she attempted to return to work on a part-time basis, under a plan established by her treating physician, Dr. Gayla Zoghlin, M.D. Due to surgical complications, she was unable to return to work, even on a part-time basis. Defendant Liberty Life ("Defendant") suspended partial disability payment to Plaintiff effective November 8, 2004, on the grounds that it had not received supporting medical documentation. On February 2, 2005,

---

[1] Liberty Life is an affiliate of Liberty Mutual, and provides long term disability insurance to Liberty Mutual employees, as well as claims administrative services for the Liberty Mutual Short Term Disability Plan.

after receiving proof of Plaintiff's medical disability, Defendant reinstated disability benefits retroactive to November 8, 2004.

In April 2005, Plaintiff informed Defendant that she had undergone another surgery. Defendant requested medical records and treatment information from the surgeon, Dr. Borovoy, as well as other physicians identified by Plaintiff. In addition, Defendant retained an investigation company to conduct surveillance on Plaintiff during the summer of 2005. According to the resulting reports, a person thought to be Plaintiff was observed driving, walking, carrying packages, and engaging in functions that did not reflect significant physical impairment.

Defendant provided Plaintiff's medical records and video surveillance reports to independent physicians for review. These physicians were Dr. Herbert Malinoff, an internist, Dr. Manaj Mehta, an internist and gastroenterologist, and Dr. Gil Lichtshein, a neurologist and psychiatrist. Each physician opined that Plaintiff could work, at least in a sedentary position. The three reports were sent to Catherine Chandick, a member of Defendant's vocational rehabilitation department, for a determination of whether Plaintiff was capable of performing the occupation of resident sales representative. Based on these reports, Ms. Chandick concluded that the Plaintiff could perform the sedentary positions within her occupation.

On October 4, 2005, Defendant issued a letter discontinuing Plaintiff's disability benefits. In addition to providing summaries of the three physician's reports, the letter referenced the surveillance tape, informing Plaintiff that her activities had been observed. According to Defendant, it reached this conclusion on the grounds that Plaintiff did not meet the definition of "disability" under the Policy, because her condition did not prevent her from performing the

material duties of her occupation of resident sales representative.

On April 25, 2006, Plaintiff appealed the decision. Plaintiff produced affidavits from herself, her husband, and Dr. Zoghlin, indicating that the person on the video was not Plaintiff, but rather Plaintiff's 23 year-old daughter. Plaintiff also submitted additional medical records including: four surgical reports regarding her esophageal surgeries; letters from Dr. Zoghlin and Dr. Borovoy stating that Plaintiff's medical records had been misinterpreted; the results of a Functional Capacities Evaluation concluding Plaintiff could sit, stand, and walk for a maximum of an hour; additional reports from a psychologist and psychiatrist; records from a pain management clinic; and physical therapy notes.

Defendant referred Plaintiff's medical records, but not the surveillance video, to two new doctors, Dr. Alan Altman, an internist and gastroenterologist, and Dr. Jean Dalpe, a psychiatrist and neurologist. Both physicians stated that Plaintiff could return to her sedentary occupation as a sales representative. The reports were forwarded to Ms. Chandick, who again opined that Plaintiff could still perform the duties of her occupation as a sales representative.[2] On June 1, 2006, Defendant upheld its original termination of benefits, indicating that Plaintiff's file would

---

[2] Defendant's vocational consultant concluded that Plaintiff's "job is resident sales rep. The [Plaintiff's] occupation is sales rep and is performed in 2 basic manners in the national economy. One involves traveling to meet with customers (which the [Plaintiff] did) and the other is done in an office setting using a telephone and computer to communicate with customers. There are many positions in the national economy for both inside and outside sales reps. The [Plaintiff's] functioning enables her to perform the sedentary positions within the occupation of sales rep. She therefore is able to perform her own occupation based on the 2 above noted peer reviews." (AR 233). Plaintiff agrees that her job is not the sedentary position, but the position involving traveling to meet customers. Plaintiff argues that the traveling position, rather than the sedentary position, should be considered her "own occupation." The Court does not address this issue because the Court is satisfied that Plaintiff was unable to perform even the sedentary position.

4

not be subject to further review. Plaintiff never had the opportunity to respond to the reports of the two new reviewers. Plaintiff filed this lawsuit alleging wrongful termination of benefits under ERISA.

## III. LAW & ANALYSIS

### A. Termination of Benefits

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). If a plan gives the administrator such discretion the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). Under the Policy, Defendant retains discretionary authority to determine eligibility for benefits or to construe the terms of the Policy. Therefore, the Court must review Defendant's determination of Plaintiff's eligibility for benefits under an arbitrary and capricious standard of review. *See Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376, 380 (6th Cir. 1996)("[A]pplication of the highly deferential arbitrary and capricious standard of review is appropriate only when the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan.")

"An arbitrary and capricious standard is highly deferential and requires that the administrator's decision be upheld as long as it is rational in light of the plan's provisions as well as reasonable with no abuse of discretion. It is only if the court is confident that the decision maker overlooked something important or seriously erred in appreciating the significance of

5

evidence that it may conclude that a decision was arbitrary and capricious." *Eriksen v. Metropolitan Life Insurance Co.*, 39 F.Supp.2d 864, 870 (6th Cir. 1999)(internal citations omitted). "[T]he standard requires that the decision 'be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.2d 514, 520 (6th Cir. 1998) *quoting Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). "A decision should be upheld if it is the result of a deliberate principled reasoning process and supported by substantial evidence." *Rochow v. Life Insurance Co. of North America*, 482 F.3d 860, 865 (6th Cir. 2007). While certainly a deferential standard of review, the Sixth Circuit has acknowledged that the "highly deferential standard of review applicable in this case does not automatically mandate adherence" to the administrator's decision. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Further, "deferential review is not no review, and deference need not be abject." *Id.* at 73 (internal quotations omitted).

The Supreme Court has held that, when reviewing benefit denials under ERISA, courts are asked to "determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Metlife Insurance Co. v. Glenn*, 128 S.Ct. 2343, 2321 (2008). There are no mandated factors that a court must consider, and "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.*

    **1.**    **Conflict of Interest**

Plaintiff argues that the Court must weigh Defendant's conflict of interest in determining

whether Defendant's termination of disability benefits was unreasonable.[3]  Indeed, there is an "actual, readily apparent conflict here," where Defendant "both funds and administers the plan at issue here.  Accordingly, it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1988).  Where such a conflict of interest exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Glenn*, 128 S.Ct. at 2346.

Defendant argues that Plaintiff has proffered no evidence indicating that the circumstances "suggest a higher likelihood that [the conflict of interest at issue] affected the benefits decision." *Id.* at 2351.  Plaintiff, however, proffers what has been titled the "LTD Worksheet," and argues that her claim could expose Defendant to a liability just under one million dollars, indicating a financial incentive to terminate the claim.  ERISA requires a disability determination to be "made solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries." *Rochow*, 482 at 866.  Certainly, this conflict of interest is a factor to be weighed in concert with the other facts of the case.

2.      **"Quantity and Quality" of the Evidence**

---

[3] Plaintiff attempts to further illustrate Defendant's bias by arguing that Defendant's claim practices have been problematic in the past.  To do so, Plaintiff points to *Loucks v. Liberty Life Assurance Co.,* 337 F.Supp.2d 990 (W.D.Mich 2004), a decision which was ultimately vacated and "depublished."  The district court's order precluded the opinion from being used against Defendant for any purpose.  Accordingly, the Court cannot consider this argument.

A review of the denial of benefits under the arbitrary and capricious standard obligates the Court to "includ[e] some review of the quality and quantity of the evidence on both sides of the issues. Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence–no matter how trustworthy or untrustworthy– to support a denial of a claim for ERISA benefits." *McDonald*, 347 F.3d at 172.

As an initial matter, the Court finds that the video surveillance tape and accompanying reports of a woman conducting day-to-day activities without issue, a woman who was later established to be Plaintiff's daughter, tainted a significant portion of Defendant's investigation into Plaintiff's benefits claim. The Court will not consider the peer review reports of Dr. Malinoff, Dr. Mehta, or Dr. Lichtstein, as all three physicians were provided with the surveillance tape, and their findings were influenced, at least in part, by the misleading information provided by the tape. Further, the Court will not consider the first opinion of Catherine Chandick, Defendant's vocational consultant, because, to form her opinion, she reviewed peer review reports that drew conclusions based on the incorrect belief that the woman pictured in the video surveillance tape was Plaintiff. Defendant recognized the necessity of sending the files to two new reviewers who had not been tainted by the tape. The Court finds that it was arbitrary and capricious to have the second review completed by the same vocational consultant, who was similarly tainted by the previous viewing of the tape. Although the Court will accept her second review, it must be considered in light of the fact that Ms. Chandick was already aware of the surveillance tape, and such awareness may have impacted her second review.

The reports of Dr. Alan Altman and Dr. Jean Dalpe were created independent of the video surveillance tape, and will be considered by this Court. Dr. Altman, an internist and gastroenterologist, reviewed Plaintiff's records to ultimately conclude that Plaintiff was capable of returning to work in a sedentary position. AR 242. Dr. Dalpe, a psychiatrist and neurologist, reviewed Plaintiff's record to ultimately conclude that there "are no restrictions and limitations on work activities as of October 5, 2005, due to psychiatric impairment." AR 246.

In addition to Defendant's reports, Plaintiff submitted several reports from her own treating physicians. In addition to sending Plaintiff's medical records, Dr. Zoghlin, Plaintiff's primary care provider, also sent a letter to Defendant indicating "numerous errors" in Defendant's original October 4, 2005 termination letter. She explains the abdominal issues, pain, and need for medication experienced by Plaintiff, and ultimately concludes although "she would like to be well enough to work again . . .at this time her pain precludes even a sedentary job." (AR 433). Dr. Zoghlin also completed a "Physical Capacities Evaluation," in which she opined that Plaintiff could only sit, stand, and walk for one hour each day. (AR 389).

Plaintiff submitted records from Dr. Borovoy, the podiatrist who operated on Plaintiff's torn tendons. (AR 406). These records indicated that Plaintiff had a tear on the peroneal tendon, which required surgery. (AR 254). Dr. Borovoy also wrote a letter regarding the termination of Plaintiff's disability benefits, in which he corrected misunderstandings or misinterpretations of his records included in Defendant's October 4, 2005 termination letter. *Id.* In his letter, he stated "[w]hile I spoke of the fact that [Plaintiff] could weightbear, it did not mean that she could return to normal activity levels at that time [June 8, 2005]. It simply meant that she could bear weight on her foot." *Id.* He further noted Plaintiff reported continued postoperative pain, which

9

required physical therapy. *Id.* Plaintiff also submitted MRI reports of her tendon tears, and physical therapy notes. Although Dr. Borovoy's records indicated improvement at times (AR 656), there are also reports of continued pain (AR 668). In fact, as late as January of 2006, Plaintiff was still experiencing pain, and additional tears in her tendons. (AR 258).

Plaintiff submitted records and a letter from her treating psychologist, Dr. Michael Syntiak, and Dr. Leslee Emerson, a psychiatrist who examined Plaintiff at Dr. Syntiak's request. Both treaters indicated that Plaintiff suffers from chronic pain syndrome and depression. (AR 348, AR 304). Although Dr. Emerson did not expressly opine on Plaintiff's ability to return to work, she diagnosed Plaintiff with chronic pain and depression, and notes that she has "daily panic attacks, crying episodes, loss of interest, hopelessness, and passive suicidal ideation." (304). Dr. Syntiak indicated that, through his work with Plaintiff, he concluded that Plaintiff is appropriately using treatment, not malingering, and genuinely experiencing the pain of which she complains. (AR 349). Dr. Syntiak opines that, although Plaintiff is not psychologically disabled, he "would contend that her disability is the result of a combination of factors both physical and emotional that has served to undermine her functioning, resulting in her inability to work." *Id.* Dr. Syntiak believes that, with additional progress, Plaintiff will eventually be able to return to work. Plaintiff also provided Defendant with records from her pain management clinic.

It is well-settled that, in weighing medical opinions, "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan*, 123, S.Ct. 1965, 1967 (2003). Similarly, plan administrators are not required to credit the opinions of treating physicians over other relevant evidence. *Id.* However, plan administrators

"may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 1972.

It is undisputed that Defendant's independent reviewers never physically examined or operated on Plaintiff. Defendant argues, however, that Plaintiff has "distorted" the medical record by overstating the number of abdominal surgeries she has had, submitting records that dated back a year prior to when her benefits were discontinued, falsely claiming that Dr. Zoghlin performed a functional capacity evaluation, and pointing to indications by Dr. Borovoy that Plaintiff's tendon condition was improving. The Court does not find this conclusion to be supported by evidence in the administrative record.

Plaintiff has provided evidence that she did, in fact, undergo four abdominal surgeries (AR 387-389, 926, 907-930, and 871). Defendant provides no justification for discounting one year-old medical records regarding pain therapy as not applicable to Plaintiff's current condition. Def.'s Response to Pl.'s Mot. for Entry of Judgment, at 5. Defendant's only grounds for contending that Dr. Zoghlin never performed a functional capacity evaluation, despite having submitted her findings from such an evaluation, is the absence of specific notes on such in the record. *Id.* at 7. Finally, Defendant seems to disregard the clarification of Plaintiff's tendon condition provided by the surgeon who operated on her. *Id.* at 7-8.

Defendant has provided no compelling basis for disregarding the records and opinions of Plaintiff's treating physicians. The Court finds that it was arbitrary and capricious to disregard the opinions of Plaintiff's treating physicians in favor of the two independent reviewers who had never seen or evaluated Plaintiff. When weighed together with Defendant's clear conflict of interest, Defendant was arbitrary and capricious in basing their opinion to terminate Plaintiff's

11

disability benefits on the reports of the two of Defendant's consultants, while overlooking the record evidence that supports a finding of "disabled." Because Defendant's determination is not supported by the administrative record, Plaintiff's benefits must be reinstated through March, 2006.

B.     **Benefits During "Any Occupation" Period**

Defendant argues that, even if eligible for benefits during the "own occupation" period defined under the Policy, Plaintiff is not eligible for benefits during the "any occupation" period, beginning after March of 2006 (eighteen months after the approval of Plaintiff's disability benefits in October of 2004). Although Plaintiff's benefits were terminated in October of 2005, Plaintiff's "own occupation" period would have ended in March of 2006. Defendant further states that there has been no administrative determination as to whether Plaintiff is disabled for purposes of the "any occupation" period, and argues that Defendant did not include this period in her Complaint.

Plaintiff maintains that her Complaint does, in fact, cover all disability benefits through the age of 65. It is undisputed, however, that there has been no administrative determination as to whether Plaintiff is eligible for benefits during the "any occupation" period. Therefore, this matter is remanded to Defendant for investigation and administrative determination, consistent with ERISA, as to whether Plaintiff qualifies for benefits subsequent to March, 2006.

IV.    **CONCLUSION**

For the reasons set forth herein,

**IT IS ORDERED** that Motion for Judgment to Reinstate Long-Term Disability Benefits [Docket No. 15, filed on June 2, 2009] is **GRANTED IN PART** (reinstating benefits through

March, 2006).

**IT IS FURTHER ORDERED** that Motion for Entry of Judgment [Docket No. 14, filed on June 2, 2009] is **GRANTED IN PART** (remanding the case for an administrative determination of whether Plaintiff qualifies for benefits after March, 2006).

**IT IS FURTHER ORDERED** that this case is remanded to Defendant for an administrative determination of whether Plaintiff qualifies for benefits after March, 2006).

                    S/Denise Page Hood
                    Denise Page Hood
                    United States District Judge

Dated: March 31, 2010

    I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2010, by electronic and/or ordinary mail.

                    S/William F. Lewis
                    Case Manager